UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ACADEMY OF THE SACRED HEART | * | CIVIL ACTION |
| OF NEW ORLEANS | * | NO.:  2:22-cv-04401 |
| | * | |
| VS. | * | JUDGE: LANCE M. AFRICK |
| | * | |
| CERTAIN UNDERWRITERS AT | * | MAGISTRATE JUDGE: |
| LLOYD'S, LONDON; et al | * | DONNA PHILLIPS CURRAULT |

REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

MAY IT PLEASE THE COURT:

Defendants respond herein to Plaintiff's Opposition to the Motion to Compel Arbitration, as follows: the service of suit endorsement does not supersede the arbitration clause; equitable estoppel is recognized under Louisiana law and applies to this dispute; the domestic Defendants have an independent right to enforce arbitration; and state law does not supersede the Convention.

1. **The Service of Suit Endorsements Do Not Supersede the Arbitration Clause**

Plaintiff incorrectly claims that the Service of Suit endorsements require the Arbitration Clause to be read out of the Policy and strip the Defendants of their legal and contractual right to invoke arbitration.  The Fifth Circuit unequivocally rejected this argument in *McDermott Int'l v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991), holding that Arbitration Clauses and a Service of Suit Clauses must be construed to give effect to both, and to further the compelling federal interest in the arbitration of international commercial disputes.  **This is settled law.**

A. *This Action is Governed by The Convention on the Recognition and Enforcement of Foreign Arbitral Awards.*

In 1970, Congress ratified the Convention, which was negotiated under the Constitution's Treaty Power, and enacted enabling legislation (the "Convention Act") to enforce the Convention in United States courts.  *See* 9 U.S.C. §§ 201-208.   By doing so, Congress made the Convention

the "law of the land", on par with the Constitution. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985).

The Convention Act is part of the Federal Arbitration Act (the "FAA"). The Supreme Court has held that the FAA is a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). The strong federal interest in arbitration is to be accorded even greater weight in cases arising under the Convention. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 638-40, 105 S. Ct. 3346, 3356 (1985). In light of this compelling federal interest, any doubts "concerning the scope of arbitral issues should be resolved in favor of arbitration*, whether the problem at hand is the construction of the contract language itself* or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone, supra.* at 24-25, 941 (emphasis added.) This rule applies to the interpretation of Arbitration and Service of Suit Clauses.[1]

### B. The Rules of Contractual Interpretation Require that the Arbitration Clause and Service of Suit Endorsements Be Harmonized.

Courts within the Fifth Circuit, and nationwide, have held that where two provisions of a contract can be reconciled and can both be given meaning, that interpretation must prevail:

> An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions.

---

[1] *See*, *Sec. Life Ins. Co. of Am. v. Hannover Life Reassurance Co. of Am.*, 167 F. Supp. 2d 1086, 1088-89 (D. Minn. 2001) ("any inconsistency between the arbitration and service of suit clauses should be resolved in favor of arbitration"); *Seedor v. Am. Dynasty Surplus Lines Ins. Co*., 2001 Bankr. LEXIS 2285, at *30-32 (Bankr. E.D. Pa. Mar. 26, 2001) (rejecting an interpretation of a Service of Suit Clause that would "eviscerate" an Arbitration Clause because *Moses* requires "a strong presumption in favor of arbitration where some doubt exists").

*Peterson v. Schimek*, 98-1712 (La. 03/02/99); 729 So. 2d 1024, 1029; *St. Paul Surplus Lines Ins. Co. v. Settoon Towing, L.L.C.*, 720 F.3d 268, 279 (5th Cir. 2013) ("Endorsements affixed to a policy of insurance are to be construed in connection with the printed provisions of the policy and the entire agreement harmonized, if possible . . .").[2] Only when an endorsement irreconcilably conflicts with language contained in the body of the policy is the endorsement entitled to primacy. *St. Paul Surplus Lines Ins. Co. v. Settoon Towing, L.L.C., supra.* at 279.[3]

### C. The Arbitration Clause and Service of Suit Endorsement are Complementary, and Both Can Be Given Effect.

Plaintiff's attempt to distinguish *McDermott* is unsuccessful. Regardless of whether *McDermott* was decided in the context of removal or compelling arbitration, *McDermott* is controlling law on the construction of Arbitration and Service of Suit Clauses: **Service of Suit Clauses do not negate Arbitration Clauses**.[4] In *McDermott*, the Fifth Circuit held that the plaintiffs were not free to ignore the Arbitration Clause, and that it was illogical to think that the defendant insurers would include such a broad Arbitration Clause and simultaneously give the plaintiffs the means to avoid it through the Service of Suit Clause. *Id.* at 205. The Court held that "where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect" *Id.*[5]

---

[2] *See also*, *Premium Fin. Co. v. Emp'rs Reinsurance Corp.*, 979 F.2d 1091, 1093 (5th Cir. 1992) ("Further, an endorsement merges into the policy and they must be harmonized when reading the document"); *Turbo Trucking Co. v. Those Underwriters at Lloyd's London*, 776 F.2d 527, 529 (5th Cir. 1985) ("the court should eschew any interpretation of a policy which would render meaningless a policy provision").

[3] Plaintiff's citation to *Zeitoun v. Orleans Par. Sch. Bd.*, 2009-1130 (La. App. 4 Cir 03/03/10); 33 So. 3d 361, 363 is irrelevant, as it did not address the construction of service of suit or arbitration clauses.

[4] Plaintiff cites *Arch Specialty Ins. Co. v. Univ. of S. Cal.*, No. 19-cv-6964 DDP (ASx), 2020 U.S. Dist. LEXIS 258708, at *17 (C.D. Cal. July 20, 2020) for the contrary proposition, but *Arch Specialty* is irrelevant because it addresses the unique case of a conflict between a primary insurer's policy and an excess insurer's policy, which explicitly stated that its terms controlled in the event of conflicting language. These are not the facts here. Neither *Arch Specialty*, nor any of the cited cases from foreign jurisdictions, provides grounds to reverse established 5th Circuit law.

[5] *See also*, *Certain Underwriters at Lloyd's v. Vintage Grand Condo. Ass'n*, 2019 U.S. Dist. LEXIS 22709, at 13 (S.D.N.Y. Feb. 6, 2019) ("That rule is still followed in this Court, because it is the only way to make sense of both clauses — to 'read arbitration and service of suit clauses 'in harmony, rather than in conflict with each other'''").

The *McDermott* court held that the Arbitration Clause and the Service of Suit Clause could be reconciled by interpreting the Service of Suit Clause *consistent with* the Arbitration Clause to provide a judicial forum for disputes concerning the enforcement of arbitration awards:

> Underwriters executed the policy thinking that a subset of all disputes -- those arising from the policy -- would be determined by arbitration. The service-of-suit clause's "failure to pay a claim" provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award. . . . Enforcement suits do not concern differences arising from the parties' contract, but rather differences concerning the propriety of the arbitration proceedings held pursuant to that contract. Thus, the policy may be read as contemplating that a claim for failure to pay under the policy not be made in court until after an arbitration proceeding.

*McDermott* at 205.  Although the specific issue before the *McDermott* court was the waiver of removal rights, its ruling regarding the reconciliation of Arbitration and Service of Suit Clauses applies to all cases arising from arbitration, and Convention arbitration specifically.[6]

### D.  The Placement of the Service of Suit Clauses in Endorsements is Meaningless.

Plaintiff asks this Court to upset what has been settled law in the Fifth Circuit for the past 30 years and to rule contrary to *McDermott* based on the placement of the service of suit clauses in endorsements which, Plaintiff claims, negates the arbitration clause.  Louisiana courts have

---

[6] *See also*, *Ochsner/Sisters of Charity Health Plan v. Certain Underwriters at Lloyd's*, 1996 U.S. Dist. LEXIS 12561, at *7 (E.D. La. 8/30/1996):

> Although the holding in *McDermott* dealt specifically with the waiver of removal rights and the presence of a service of suit clause, the Fifth Circuit also considered the relationship between an arbitration clause and a service of suit clause in the same contract. The Fifth Circuit Court found that the two seemingly contradictory clauses served two different and distinct purposes. To give meaning to the arbitration clause in the face of Congress' policy favoring arbitration, the Fifth Circuit determined that the arbitration clause ensured that all disputes arising from the policy would be determined by arbitration and that the service of suit clause applied to suits to enforce an arbitration award. The Fifth Circuit interpreted the clauses in this manner to avoid rendering the arbitration clause meaningless.
>
> This Court finds that the arbitration clause, on its face, requires arbitration of the dispute between the parties and that the service of suit clause provides a means to enforce any resulting arbitration award, but that the latter clause does not provide an independent means by which to resolve disputes covered by the arbitration clause.

*Id.* at 6-7.

4

rejected this argument.

In a case involving the same Arbitration Clause and Service of Suit endorsements at issue in the present case, Judge Lemelle rejected the argument that the Service of Suit endorsements superseded the Arbitration Clause. *1010 Common, LLC v. Certain Underwriters at Lloyd's, London,* 2020 U.S. Dist. Lexis 233867 (E.D. La. 12/14/2020). Judge Lemelle held that the *McDermott* decision required the reconciliation of the Arbitration Clause and Service of Suit endorsements: "the service of suit provision does not negate this Court's jurisdiction as held in the *McDermott* case." *Id.* at 26. He also found that the Service of Suit endorsements provide:

> Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

*Id.* at 25-26. Judge Lemelle held that this language in the Service of Suit Clause clearly does not prevent removal to the federal court under the Convention. Instead, the two clauses are intended to "work in tandem", with the Endorsement providing recourse to the courts to enforce arbitration. *Id.* at 26-27.[7] Judge Lemelle ordered the matter to arbitration. *Id.* at 34.

In *Farmers Rice Milling Company et. al. v. Certain Underwriters at Lloyd's London, et al.* (M.D. La., Case No. 21-503), Judge Dick also rejected Plaintiff's argument that "the service of suit endorsement explicitly 'changes the policy' and provides an insured the right to bypass arbitration in the event that Defendants fail to pay a claim." (Exhibit "A", September 14, 2022 Ruling by Judge Shelly D. Dick, at page 7). Citing both *McDermott* and *1010 Common*, Judge Dick held:

> Multiple courts have analyzed substantially similar, and even identical policies, to the Account Policy at issue and found that the arbitration and service of suit clauses

---

[7] *See also, Woodward Design & Build, LLC v. Certain Underwriters at Lloyd's London,* 2020 U.S. Dist. LEXIS 178799 *8-9 (E.D. La. 9/9/2020) (interpreting Arbitration Clause and Service of Suit endorsement and holding that the endorsement did not waive the Arbitration Clause).

are compatible. The arbitration clause governs all disputes arising from the policy and mandates the insured participates in arbitration. Thereafter, the service of suit clause ensures the insurer will submit to jurisdiction in the United States if court action is necessary to compel or enforce an arbitration award. **The fact that the service of suit clause appears in a separate endorsement does not change this analysis or the result.**

(Emphasis added) *Id.* at pages 10-11.  Judge Dick ordered arbitration. *Id.* at page 11.

### 2. Equitable Estoppel Applies to This Dispute, and Permits Domestic Insurers to Arbitrate

At Section A of its Opposition, Plaintiff claims that there are "multiple, separate contracts" of insurance at issue, which is a common argument raised by plaintiffs against arbitration, but Plaintiff then makes no argument regarding how that relates to equitable estoppel or any other argument in the pleading.  In an abundance of caution, Defendants reply that in *Port Cargo Serv., LLC v. v. Certain Underwriters at Lloyds London,* No. 18-6192, 2018 U.S. Dist. LEXIS 144291 (E.D. La. 8/24/2018), Judge Lemmon held that where a plaintiff alleges substantially interrelated conduct between signatories and non-signatories to the same arbitration clause at issue in this litigation,  "the domestic insurers can utilize the theory of equitable estoppel to compel plaintiffs to arbitrate their claims against the domestic insurers by the terms of an arbitration agreement that is subject to the Convention." *Id.* at *21.[8]  Plaintiff makes no effort to refute Defendants' summary of the alleged concerted misconduct of the Defendants set forth on Page 11 of their Motion to Compel Arbitration.

Plaintiff claims that equitable estoppel is not available in this matter because *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) was decided under Texas law and

---

[8] *See also, Clean Pro Carpet & Upholstery Care Inc. v. Upper Pontalba of Metairie Condo Ass'n*., 2021 U.S. Dist. Lexis 30111 at *13 (E.D.La. 2/18/2021) (Applying equitable estoppel when a "signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract"); *City of Kenner v. Certain Underwriters at Lloyd's*, No. 21-2064, 2022 U.S. Dist. LEXIS 18621, at *11 (E.D. La. 2/2/2022) ("the City's allegations of interdependent and concerted misconduct by both the signatories to the valid and enforceable arbitration clause and non-signatories suffices to establish equitable estoppel"); *Holts v. TNT Cable Contractors, Inc*., No. 19-13546, 2020 U.S. Dist. LEXIS 37262, at *8-9 (E.D. La. 3/4/2020) (same).

conflicts with Louisiana law.  Plaintiff's argument means that every Eastern District case applying *Grigson* to Convention arbitration matters was wrongly decided. In addition, this argument ignores the fact that "*Grigson* estoppel" is well entrenched in Louisiana law.[9]

### 3. The Domestic Defendants, as Surplus Line Carriers, Are Exempted From La. R.S.22:868(A) and Have an Independent Right to Compel Arbitration

Even if equitable estoppel were somehow not available, the domestic Defendants in this matter, as surplus lines carriers, are specifically exempted from the prohibitions of La. R.S. 22:868, and are permitted to independently enforce the arbitration clause.  La. R.S. 22:868 has never explicitly prohibited arbitration clauses.  Rather, Louisiana courts have previously read the statutory prohibition of policy provisions "depriving the courts of this state of the jurisdiction . . ." to proscribe arbitration clauses, in furtherance of a perceived public policy requiring that insurers doing business in Louisiana must be held to answer in its courts.[10]

However, the Louisiana Supreme Court rejected this public policy in *Creekstone/Juban I, LLC v. XL Ins. Am., Inc.*, 2018-0748 (La. 05/08/19); 282 So. 3d 1042, where it analyzed the "depriving the courts of this state of the jurisdiction" language.[11]  The Court held that the public

---

[9] *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.,* 2011-0881 (La. App. 4 Cir 12/14/11); 82 So. 3d 473, 478:

> We, like the Court in *Grigson*, do not find that the trial court abused its discretion in applying the equitable estoppel doctrine to find that the claims against defendants are so intertwined with and dependent upon the subcontract that they must be sent to arbitration as well.

*See also*, *ERG Enters., LLC v. Green Coast Enters., LLC,* 2019-1104 (La. App. 4 Cir 05/13/20); 299 So. 3d 1194, 1200 (" [T]he claims are intertwined such that it should be sent to arbitration"); *Saavedra v. Dealmaker Devs., LLC*, 2008-1239 (La. App. 4 Cir 03/18/09) n.5; 8 So. 3d 758, 763 ("given the relatedness of the claims collectively asserted against the defendants the arbitration agreement can be invoked by . . . the non-signatory defendants"); *Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.,* LLC, 2018-1249 (La. App. 1 Cir 12/30/20); 317 So. 3d 715, *writ denied*, 2021-00382 (La. 06/08/21); 317 So. 3d 323 ("allegations of misconduct against [defendants] are concerted and interdependent such that all of Texas Brine's claims against the [defendants] are subject to consideration by the arbitration panel").

[10] *See Bonura v. United Bankers Life Ins. Co.,* 509 So. 2d 8, 11(La. App. 1 Cir. 1987), *writ denied,* 512 So. 2d 462 (La. 1987).

[11] Plaintiff relies heavily on *Creekstone*, but this reliance is misplaced.  Plaintiff does not quote from the Supreme Court's majority in *Creekstone*, **but from Justice Weimer's concurrence,** which was not joined by any other justices and "does not constitute binding authority." *Stevens v. Chen*, 2011-1486 (La. App. 1 Cir 06/08/12), *writ denied* 2012-1590 (La. 10/12/12); 98 So. 3d 876.

policy that had led Louisiana courts to find a prohibition in La. R.S. 22:868 against forum selection clauses in insurance policies was outdated:

> In *Shelter Mutual*, this Court explained the evolution of forum selection clauses, noting that they were historically found to be invalid as against public policy or that their effect was to impermissibly "oust the jurisdiction" of a court. 2013-1977, p. 4, 148 So. 3d at 874. However, a shift occurred after the Supreme Court's decision in *Bremen v. Zapata Offshore Co.*, in which the Supreme Court described this view as a "vestigial legal fiction," that has "little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets." 407 U.S. at 12.

*Id.* at 1046-47.  The Court enforced a forum selection clause in an insurance policy which required that all suits against the insurer be brought in New York, under New York law.[12]

Following the Supreme Court's decision in *Creekstone*, the Louisiana Legislature amended La. R.S. 22:868 (A)(2) to specifically prohibit venue selection clauses in insurance contracts, but also inserted Subsection "D", which provides:

> **D.** The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

The policy forms of surplus line insurers are not subject to approval by the Department of insurance. La. R.S. 22:446(a).  The Fifth Circuit has held that La. R.S. 22:868(D) exempts surplus line carriers from the statutory prohibition against forum selection clauses.  In *Ram Krishana Inc. v. MT Hawley Ins. Co.*, No. 2:21-CV-03031, 2022 U.S. Dist. LEXIS 15975 (W.D. La. Jan. 27, 2022), the district court held that, La. R.S. 22:868(D) notwithstanding, forum selection clauses violated public policy and were prohibited even as to surplus line carriers.  The Fifth Circuit granted a writ of mandamus, reversed, and ordered the case transferred to the Southern District of New York. *In re MT. Hawley Ins. Co.,* No. 22-30111, 2022 U.S. App. LEXIS 28212. (5th Cir.

---

[12] *See also*, *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018) (enforcing a forum selection clause mandating that suit be brought in New York, under New York law).

Apr. 28, 2022).  In *Brooks & Brooks Invs. LLC v. Mt. Hawley Ins. Co.*, No. 22-CV-03854, 2022 U.S. Dist. LEXIS 219247 (E.D. La. Dec. 2, 2022), Judge Zainey recognized that the Fifth Circuit has "eviscerated" any argument that La. R.S. 22:868(D) did not exempt surplus line insurers from the prohibitions of La. R.S. 22:868(A). *Id.* at *5-6.  In *Hotel Mgmt. of New Orleans, LLC v. Gen. Star Indem. Co.*, No. 21-876, 2022 U.S. Dist. LEXIS 90008 (E.D. La. May 13, 2022), Judge Milazzo ruled:

> Because, as even Plaintiff acknowledges, the policy at issue here is an instance of surplus lines insurance, which does not require approval by the Department of Insurance, § 22:868(D) applies.  The prohibition on forum selection clauses in § 22:868(A) is inapplicable. Accordingly, the Court finds that the forum selection clause agreed upon by the parties is enforceable.

*Id.* at *9.  *See also, Id.* at *11 ("Whatever interest § 22:868(A) evinces is not relevant to this case because, as explained above, the state legislature carved out an applicable exception to that provision in § 22:868(D)").

The United States Supreme Court and the Fifth Circuit have recognized, consistently, that arbitration clauses are a subset of forum selection clauses.[13]  Like a forum selection clause, an arbitration clause designates the proper forum and procedure for proceedings.  Plaintiff has provided no authority (outside of the *dicta* of Justice Weimer's concurrence in *Creekstone*) for this

---

[13] *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519, 94 S. Ct. 2449, 2457, 41 L. Ed. 2d 270 (1974):

> An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.  The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a "parochial concept that all disputes must be resolved under our laws and in our courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."

*See also*, *Vimar Seguros Y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 534, 115 S. Ct. 2322, 2326 (1995) ("foreign arbitration clauses are but a subset of foreign forum selection clauses in general"); *Warren v. Fannie Mae,* 733 F. App'x 753, 765 (5th Cir. 2018) (*citing Scherk*); *Barnett v. DynCorp Int'l, L.L.C.,* 831 F.3d 296, 302 (5th Cir. 2016);*Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997); *Smith v. Lucent Techs., Inc.*, No. 02 - 0481, 2004 U.S. Dist. LEXIS 4074, at *28 n.33 (E.D. La. Mar. 15, 2004); *Cont'l Grain Co. v. K/S Trianon Shipping, Ltd.*, 92-0840, 1992 U.S. Dist. LEXIS 15215, at *9 (E.D. La. Oct. 7, 1992).

Court to manufacture an unspoken exception of La. R.S. 22:868(D), and to carve out arbitration clauses from the statutory exemption granted to surplus line insurers.

### 4.   Federal Law on Convention Arbitration Supersedes State Law

Plaintiff incorrectly claims that Louisiana state law determines whether arbitration may be ordered in this matter.  As stated in Defendants' Motion to Compel Arbitration, the Fifth Circuit has repeatedly ruled that "the Convention supersedes state law", including La. R.S. 22:868. *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se,* 923 F.3d 427, 431-432 (5th Cir. 2019); *See also, Safety Nat'l Cas Corp. v. Certain Underwriters*, 587 F.3d 714, 725 (5th Cir. 2009).

### 5.   Plaintiff's "Equities" Argument, Based on Bad Faith Penalties, is Meritless

In *STMB Props., LLC v. Certain Underwriters at Lloyd's London*, No. 22-2229, 2022 U.S. Dist. LEXIS 156895 (E.D. La. Aug. 31, 2022), arising under the same Arbitration Clause, this Honorable Court held bad faith claims to be arbitrable, and stated that it may have jurisdiction following arbitration to address any legitimate issues of Louisiana law.  *Id.* at *7.[14]

Respectfully submitted,

**ADAMS HOEFER HOLWADEL, LLC**

 */s/ Phillip J. Rew*
**BRUCE R. HOEFER, JR. (#6889)**
**Email:  brh@ahhelaw.com**
**D. RUSSELL HOLWADEL, T.A. (#16975)**
**Email:  drh@ahhelaw.com**
**PHILLIP J. REW (#25843)**
**Email:  pjr@ahhelaw.com**
400 Poydras Street, Suite 2450
New Orleans, Louisiana  70130
Telephone:     (504) 581-2606
Facsimile:     (504) 525-1488
***Attorneys for all Insurers on Account Policy No. 831853***

---

[14] *See also*, *Figear, LLC v. Velo CityRisk Underwriters Claims*, No. 22-cv-01094, 2022 U.S. Dist. LEXIS 127122, (E.D. La. July 18, 2022) (Judge Fallon holding that arbitration clause required arbitration of bad faith claims); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 20-102, 2021 U.S. Dist. LEXIS 20042, at *15 (M.D. La. Feb. 2, 2021) (same).

**CERTIFICATE OF SERVICE**

      I certify that on this 13th day of December, 2022, the undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Phillip J. Rew*

**PHILLIP J. REW**
