**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


ACADEMY OF THE SACRED                                    CIVIL ACTION
HEART OF NEW ORLEANS

VERSUS                                                            NO. 22-4401

CERTAIN UNDERWRITERS AT                                  SECTION I
LLOYD'S LONDON, ET AL.

<u>ORDER AND REASONS</u>

Before this Court is a motion[1] by defendants Certain Underwriters at Lloyd's,

London, severally subscribing to Certificate No. AMR-41138-06 ("Certain

Underwriters"), Indian Harbor Insurance Company, QBE Specialty Insurance

Company, Steadfast Insurance Company, General Security Indemnity of Arizona,

United Specialty Insurance Company, Lexington Insurance Company, HDI Global

Specialty SE, Old Republic Union Insurance Company, GeoVera Specialty Insurance

Company, and Transverse Specialty Insurance Company, each subscribing to

Insurance Policies/Account No. 831853 (collectively, "defendants") to compel

arbitration and stay the above-captioned proceedings.[2] Plaintiff Academy of the

Sacred Heart of New Orleans ("Sacred Heart") opposes the motion. For the reasons

below, the Court grants the motion.

---

[1] R. Doc. No. 6.
[2] The defendants also filed a motion to opt out of the Streamlined Settlement Program ("SSP"), which is currently pending before U.S. Magistrate Judge Currault. R. Doc. No. 9.

# I.   FACTUAL BACKGROUND

This case arises from commercial property insurance claims made by Sacred Heart. Sacred Heart owns multiple properties that it alleges were damaged during Hurricane Ida.[3] At the time of the storm, the properties were insured by the defendants under a surplus lines insurance policy ("the policy").[4] Sacred Heart contends that the defendants failed to make appropriate payments pursuant to the policy, and has alleged causes of action for breach of contract[5] and breach of the duty of good faith and fair dealing.[6]

# II.   LAW AND ANALYSIS

## a.  The Arbitration Agreement Is Valid and Enforceable

Defendants assert that the arbitration agreement contained in the policy falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), as implemented by 9 U.S.C. § 201 *et seq.* The purpose of the Convention is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15 (1974). Section 201 of the Federal Arbitration Act ("FAA") provides that the Convention shall be enforced in United States Courts. 9 U.S.C. § 201 ("The Convention on the

---

[3] R. Doc. No. 1, ¶¶ 5–6.
[4] *Id.* ¶ 5; R. Doc. No. 6-2, at 110 ("This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code").
[5] R. Doc. No. 1, ¶ 19.
[6] *Id.* ¶¶ 20–23.

Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."); *see also* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

When applying the Convention, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; '(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'" *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)). If these requirements are met, the Convention requires an order of arbitration, unless the court finds that the "agreement is null and void, inoperative or incapable of being performed." *Id.* (citation omitted).

Defendants assert all requirements are met in this case, because (1) the insurance contract contains a written agreement to arbitrate "all matters in difference in relation to the coverages under the Policy";[7] (2) the agreement provides for arbitration in a signatory nation, namely the United States, and specifically in New York;[8] (3) the insurance policy arises out of a commercial legal relationship;[9] and (4) multiple parties to the agreement are not citizens of the United States, as

---

[7] R. Doc. No. 6-1, at 6.

[8] *Id.*

[9] *Id.*

multiple subscribing underwriters at Certain Underwriters are syndicates which are citizens of the United Kingdom, and HDI Global Specialty SE is a citizen of Germany.[10] Sacred Heart does not argue that the requirements of the Convention are not met. The Court therefore finds that the arbitration agreement falls under the Convention.

### i. Whether the Arbitration Agreement is Valid

The policy contains an arbitration clause which provides, in relevant part, that "[a]ll matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal[.]"[11] Sacred Heart argues that the arbitration agreement was negated by an endorsement provision to the insurance contract. This is a question of contract interpretation.

The endorsement provision referenced by Sacred Heart states that "[t]his Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA)."[12] The "Service of Suit Clause" in turn provides that

> It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District

---

[10] *Id.* at 6–7.
[11] *Id.* at 2–3.
[12] R. Doc. No. 11, at 6; R. Doc. No. 6-2, at 61.

> Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States . . . it is further agreed . . . that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.[13]

Sacred Heart argues that the endorsement and service of suit clause changed the terms of the policy, and "provide that Defendants have agreed to litigate in this Court[,]" thereby nullifying the arbitration clause.[14]

The Fifth Circuit rejected a similar argument in *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991). In that case, the court held that a service of suit clause similar to that at issue here "could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *Id.* at 1205. Since *McDermott*, courts have consistently held that endorsements and service of suit clauses like those in Sacred Heart's policy do not nullify otherwise valid arbitration agreements. *E.g.*, *Tra-Dor Inc. v. Underwriters at Lloyds London*, No. 21-02997, 2022 WL 3148980, at *4 (W.D. La. July 25, 2022) (applying Louisiana principles of contract formation, and finding no conflict between a service of suit clause and an arbitration clause); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-14017, 2020 WL 5793715, at *3 (E.D. La. Sept. 29, 2020) (Guidry, J.) (finding that defendants did

---

[13] R. Doc. No. 11, at 6. The above-quoted endorsement and service of suit clause are from the policy agreement with Certain Underwriters. *Id.* at 5. Sacred Heart also includes similar provisions from the policy agreement documents of the other defendants, *see id.* at 6–7, which are substantially similar.

[14] *Id.* at 8.

not waive their right to arbitration by issuing endorsement and service of suit provisions nearly identical to those at issue here); *Sw. LTC-Mgmt. Servs. LLC v. Lexington Ins. Co.*, No. 18-491, 2019 WL 1715832, at \*5 (E.D. Tex. Mar. 29, 2019) (analyzing similar applicable law endorsement and service of suit clause, determining that they did not negate an arbitration agreement, and collecting cases holding the same).[15]

Following these cases, the Court determines that the endorsement and service of suit clauses in Sacred Heart's insurance contract with defendants did not negate the arbitration agreement. Instead, the Court "construes the service-of-suit provision

---

[15] Sacred Heart argues that *McDermott* is inapposite because that decision merely "held that the service-of-suit clause did not necessarily apply to disputes concerning the proper forum to decide arbitrability questions—it did not address whether the arbitration provision itself was enforceable." R. Doc. No. 11, at 8 (emphasis omitted). While "*McDermott* dealt specifically with the waiver of removal rights and the presence of a service of suit clause, the Fifth Circuit also considered the relationship between an arbitration clause and a service of suit clause in the same contract." *Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's London Subscribing to Ins. Evidenced by Pol'y No. 757/CJ940589*, No. 96-1627, 1996 WL 495157, at \*2 (E.D. La. Aug. 30, 1996) (Clement, J.). The Fifth Circuit found that the two clauses served distinct purposes: "Underwriters executed the policy thinking that a subset of all disputes—those arising from the policy—would be determined by arbitration. The service-of-suit clause's 'failure to pay a claim' provision could be interpreted consistent with the arbitration clause to apply to suits concerning enforcement of an arbitration award." *McDermott*, 944 F.2d at 1205. Thus, the *McDermott* court harmonized the seemingly competing language of the arbitration clause and the service of suit clause. Nothing in the Fifth Circuit's opinion indicates that the court found the arbitration agreement unenforceable. Indeed, the Fifth Circuit was concerned that other signatory nations to the Convention might abrogate the Convention "[i]f state courts refuse to promptly enforce arbitration agreements in Convention cases[.]" *Id.* at 1211. Accordingly, *McDermott*'s holding is apposite to the issues currently before the Court.

as complementing the arbitration clause by providing a judicial forum for compelling or enforcing arbitration." *Sw. LTC-Mgmt. Servs.*, 2019 WL 1715832, at *6.

Sacred Heart also argues that, because La. Stat. Ann. § 22:868 generally prohibits arbitration agreements in domestic insurance policies, the arbitration agreement is unenforceable. Sacred Heart is incorrect. The Fifth Circuit has held that the Convention supersedes that state law. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 732 (5th Cir. 2009); *accord Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 683 (E.D. La. 2012) (Milazzo, J.) ("[T]he Convention supersedes La. Rev. Stat. § 22:868."); *see also* 9 U.S.C. § 201, *et seq.* (implementing the Convention). Accordingly, the Court concludes that the dispute between the parties must be arbitrated.

### b. Equitable Estoppel

The defendants assert that Sacred Heart is equitably estopped from objecting to arbitration.[16] In response, Sacred Heart notes that each of the defendants issued a separate agreement to Sacred Heart, and therefore "each of the Policies is a separate contract of insurance."[17] Sacred Heart further notes that the "Contract Allocation Endorsement" in the policy states that the "contract shall be constructed as a separate contract between the Insured and each of the Underwriters." Several of

---

[16] R. Doc. No. 6-1, at 9–14.

[17] R. Doc. No. 11, at 3. Plaintiff also argues that "[e]quitable estoppel cannot be applied in this case because it conflicts with express written law, namely, Louisiana Revised Statutes section 22:868(A)[.]"[17] However, as previously discussed, La. Stat. Ann. § 22:868(A) is superseded by the Convention. *Safety Nat'l Cas. Corp.*, 587 F.3d at 718.

the defendant insurers are domestic entities and, as the Convention does not apply to domestic insurers, Sacred Heart asserts that the domestic insurers do not have a basis to compel arbitration.[18]

"[E]quitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000). Otherwise, "the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[19] *Id.*

Other sections of this court, considering similar facts and contractual language, have agreed that although a plaintiff may have separate contracts with

---

[18] R. Doc. No. 11, at 9.

[19] Plaintiff's arguments that *Grigson* does not apply because it did not concern insurers and did not address Louisiana state law is unpersuasive. *Id.* at 14–15. Cases from this district considering *Grigson* have applied the holding to insurers—many of which are insurers in the instant case—and expressly considered Louisiana law. *See, e.g.*, *City of Kenner v. Certain Underwriters at Lloyd's London*, No. 22-2167, 2022 WL 16961130, at *2 (E.D. La. Nov. 16, 2022) (Vance, J.) ("Turning to the merits, while Louisiana law ordinarily prohibits enforcement of arbitration clauses covering insurance disputes, the Convention of the Recognition and Enforcement of Foreign Arbitral Awards . . . and it's [sic] enabling act 9 U.S.C. §§ 201, *et seq.* . . . supersede otherwise applicable state law.") (holding plaintiff to be equitably estopped from objecting to arbitration with domestic insurers per *Grigson*). Louisiana courts have likewise adopted *Grigson*'s holding. *See, e.g.*, *Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 2011-0881 (La. App. 4 Cir. 12/14/11), 82 So. 3d 473, 478, *writ denied*, 2012-0142 (La. 3/23/12), 85 So. 3d 94. ("We, like the Court in *Grigson*, do not find that the trial court abused its discretion in applying the equitable estoppel doctrine to find that the claims against defendants are so intertwined with and dependent upon the subcontract that they must be sent to arbitration as well.").

each of the insurers, the application of equitable estoppel is appropriate.

In *Port Cargo Services, LLC v. Certain Underwriters at Lloyd's London*, the court noted that certain policy language, which is the law between the parties, specified that plaintiffs had separate insurance contracts with each of the insurers. No. 18-6192, 2018 WL 4042874, at *3 (E.D. La. Aug. 24, 2018) (Lemmon, J.). However, the plaintiff in *Port Cargo* raised "allegations of substantially interdependent and concerted misconduct" on the part of the defendants: "plaintiffs allege that the[] insurers all breached the terms of the policy together through the shared adjustor . . . . [T]he coverage arguments as to all insurers are going to be identical, and the plaintiffs' evidence as to the damage to the property and the alleged breach of the insurance policy is going to be identical as to all insurers." *Id.* at *7. The court concluded that application of equitable estoppel was appropriate as "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Id.*

In *City of Kenner v. Certain Underwriters at Lloyd's London*, the court also found equitable estoppel to be appropriate where the conduct plaintiff alleged on the part of the defendants was "interdependent and concerted." 2022 WL 16961130, at *3. The court first noted that the existence of separate contracts between each of the defendants, including the domestic insurers, "results in the facial inapplicability of the Convention as to the domestic defendants, because neither party to the bilateral

insurance agreements between plaintiff and those defendants is a foreign citizen." *Id.* at *2. The court nonetheless held that the rationale underlying *Grigson* precluded the plaintiff from objecting to arbitration with domestic insurers, as the plaintiff alleged that all defendants provided plaintiff with insurance under one "collective insurance policy[,]" the plaintiff's complaint alleged that all defendants acted "interdependently and in concert" in connection with their handling of plaintiff's insurance claims, and the plaintiff "pursued the full value of its claims without differentiation among the insurer defendants[.]" *Id.* at *3.

In *Holts v. TNT Cable Contractors, Inc.*, the court found application of equitable estoppel appropriate to compel arbitration of the plaintiffs' claims against all defendants, domestic and international, where the claims against them are "inextricably tied." No. 19-13546, 2020 WL 1046337, at *3 (E.D. La. Mar. 4, 2020) (Feldman, J.).

While the defendants have separate contracts with Sacred Heart, there is only one policy agreement between the plaintiff and the defendants.[20] "Although the insurance policy states that plaintiff[] [has] separate contracts with each insurer, there is one insurance policy document that sets forth the terms and conditions of the

---

[20] R. Doc. No. 6-2, at 1. *See also* R. Doc. No. 1 ¶ 5 ("[Sacred Heart] is the named insured under a policy . . . to which each of the insurers subscribed . . . .").

coverage on the risk. The operative policy language is identical as to all of the insurers, foreign and domestic." *Port Cargo Serv.*, 2018 WL 4042874, at *7.

In its complaint, Sacred Heart's allegations do not differentiate between the defendants, but instead treat all defendants as acting in concert. For example, the complaint alleges that "[t]he insurers were timely provided [Sacred Heart's] notice of loss[,]"[21] "[o]n December 5, 2021, the insurers had Mr. Thomas Trytek, P.E. inspect the skylight[,]"[22] and "[o]n July 18, 2022, the insurers . . . sent [Sacred Heart] a letter which . . . acknowledges for the first time that [Sacred Heart] was 'claiming damages caused by or resulting from Hurricane Ida at multiple locations[.]"[23] The complaint then asserts that "[t]he insurers have failed to comply with their obligations under the Policy" and "the insurers breached their duty of good faith and fair dealing . . . ."[24] "Plaintiff, by failing to differentiate purported wrongful conduct by any particular defendants, has therefore alleged interdependent and concerted misconduct." *City of Kenner*, 2022 WL 16961130, at *3; *see also Holts v. TNT Cable Contractors, Inc.*, No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020) (Feldman, J.).

Sacred Heart's final argument against the application of equitable estoppel to compel arbitration is that principles of equity weigh in favor of not compelling arbitration, as the arbitration provision in the policy states that "the Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other

---

[21] R. Doc. No. 1 ¶ 7.
[22] *Id.* ¶ 13.
[23] *Id.* ¶ 15.
[24] *Id.* ¶¶ 19, 23.

damages of a similar nature" which the defendants could use to "avoid being subject to Louisiana's well-established statutory scheme regarding bad faith damages."[25] Another section of this court addressed such arguments and found them to be "far too speculative[,]" reasoning that "[i]t is unclear that La. R.S. § 22:1892 and § 22:1973 are even implicated in this case because it is unclear whether any of the conditions which trigger bad faith or consequential loss damages . . . are present[.]" *Certain Underwriters at Lloyd's, London et al. v. Belmont Commons L.L.C. D/B/A 925 Common et al.*, No. 22-3874, 2023 WL 105337, at *3 (E.D. La. Jan. 4, 2023) (Fallon, J.). The court consequently "decline[d] to hold that the speculative possibility of the availability of bad faith or consequential loss damages under Louisiana law creates such a conflict." *Id.* This Court agrees and finds that equitable estoppel applies;

---

[25] R. Doc. No. 11, at 16 (quoting 6-2, at 37).

Sacred Heart must arbitrate its claims against all the defendants, domestic and international.[26]

### c.  Defendants Have Shown Good Cause for Opting Out of the SSP

In its surreply to the defendants' motion to compel arbitration, Sacred Heart argues that this Court should deny defendants' motion on the grounds that they failed to opt out of the SSP.[27]

This Court adopted Case Management Order ("CMO") No. 1 on August 26, 2022 to facilitate the expeditious and orderly resolution of insurance cases arising out of Hurricane Ida through the SSP.[28] "Although parties may not opt out of the mandatory initial disclosures set forth in Section 1 [of the CMO], they may seek to opt out of the SSP in Section 3 [of the CMO] upon a showing of good cause."[29]

While Sacred Heart notes in its surreply to defendants' motion that another section of this Court denied a similar motion to compel arbitration and stay proceedings in *Friends of Young Audiences Charter Association v. Certain*

---

[26] Because the Court has found Sacred Heart's claims against all defendants, including the domestic defendants, must be arbitrated pursuant to the Convention, the Court has original jurisdiction over all of Sacred Hearts' claims pursuant to 9 U.S.C. § 203. Consequently, plaintiff's argument that the Court lacks original jurisdiction over those claims against the domestic defendants and should decline to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367 is moot. The Court also need not address the defendants' argument that La. Stat. Ann. § 22:868(D), pertaining to surplus lines insurers, creates an exception to La. Stat. Ann. § 22:868(A)(2)'s general prohibition on mandatory arbitration clauses.

[27] R. Doc. No. 24, at 4.

[28] R. Doc. No. 4.

[29] *Dupuy Storage and Forwarding, LLC v. Indian Harbor Insurance Company et al.*, E.D. La. Case. No. 22-4546, R. Doc. No. 13, at 5 (Order & Reasons granting motion to opt out of the SSP, filed by several of the same defendants in the case before this Court) (Currault, M.J.).

13

*Underwriters at Lloyd's London et al.*, E.D. La. Case No. 22-3783, R. Doc. No. 9, at 1–2 (Vitter, J.),[30] that case is distinguishable. Unlike the instant case, the defendants in *Friends of Young Audiences* failed to file a motion to stay or opt out of the SSP. Defendants in the instant case filed a motion to opt out of the SSP on November 23, 2022.[31]

Moreover, in *419 Carondelet, LLC v. Certain Underwriter's at Lloyd's London, et al*, E.D. La. Case No. 22-4311, R. Doc. No. 13 (Vitter, J.), the court recently granted reconsideration of its prior denial[32] of the defendants' motion to compel arbitration and stay the proceedings. While the court initially denied the defendants' motion on the basis that they had failed to timely opt out of the SSP,[33] upon reconsideration, the court determined that, "in certain cases, the efficient administration of justice dictates that the Court give some flexibility to the parties, as appropriate."[34] Accordingly, "even though the parties failed to timely opt-out of the SSP, . . . the Court [found] that mandating the parties [] to abide by the SSP [would] hinder rather than promote the swift and just resolution" of the case. Therefore, the court granted reconsideration and granted defendants' motion to compel arbitration and stay proceedings.[35]

---

[30] R. Doc. No. 24, at 2–3.

[31] R. Doc. No. 9.

[32] E.D. La. Case No. 22-4311, R. Doc. No. 10.

[33] E.D. La. Case No. 22-4311, R. Doc. No. 13, at 1.

[34] *Id.* at 4.

[35] *Id.* at 6. The U.S. Magistrate Judge presiding in this case "has found good cause to opt-out of the SSP when the parties agreed that the governing policy contained a mandatory arbitration provision enforceable under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards . . . , 9 U.S.C. §§ 201–09." *Shree*

14

The Court concludes that the arbitration provision of the policy at issue is enforceable under the Convention. Accordingly, good cause exists to allow the parties to opt out of the SSP.

### d. Stay Pending Arbitration

Pursuant to 9 U.S.C. § 3, when an issue subject to an arbitration clause is raised in a federal court, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *See also* 9 U.S.C. § 208 (providing that FAA provisions apply to actions governed by the Convention); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *12 (E.D. La. Dec. 14, 2020) (Lemelle, J.) (noting that "because the Convention Act incorporates the FAA," parties whose agreements fall under the Convention seek authority for stays pursuant to 9 U.S.C. § 3). Defendants have requested that this matter be stayed. Because the Court has determined that arbitration is mandated in this case, it will stay and administratively close this litigation.

### III.   CONCLUSION

Considering the foregoing reasons,

**IT IS ORDERED** that defendants' motion to compel arbitration is **GRANTED.**

---

*Jalarambapa, LLC v. Arch Specialty Ins. Co.*, E.D. La. Case No. 22-4010, R. Doc. No. 16, at 3 (Currault, M.J.).

**IT IS FURTHER ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending any further order of this Court.

New Orleans, Louisiana, January 18, 2023.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**